# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

VISTEON CORPORATION,

       Plaintiff,                       CASE NO. 16-11180

       v.                               HON. TERRENCE G. BERG

TIMOTHY LEULIETTE,

       Defendant.

_____/

**OPINION AND ORDER:
(1) GRANTING DEFENDANT'S MOTION FOR ENTRY OF JUDGMENT CONFIRMING ARBITRATION AWARD (DKT. 45); (2) DENYING PLAINTIFF'S MOTION TO CONFIRM IN PART AND VACATE IN PART ARBITRATION AWARD (DKT. 53); (3) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO SEAL (DKT. 46); AND (4) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO UNSEAL (DKT. 49)**

This case arises from a dispute between Plaintiff Visteon and Defendant Timothy Leuliette, who was terminated as Visteon's President and CEO in June of 2015. Leuliette believed he was entitled to a number of benefits after being terminated, and Visteon—which had found evidence of improper conduct by Leuliette after he was let go—took the position that he was not entitled to as many benefits because they could

have fired him "for cause." Leuliette demanded that the matter be settled by binding arbitration, as was his right under his written Employment Agreement; Visteon preferred to litigate the matter in federal court and filed this action seeking to stay the arbitration. This Court denied the stay and ordered the parties to arbitration on August 5, 2016 (Dkt. 42).

The parties have now completed the arbitration process and on October 31, 2017, the Arbitrator awarded some of the benefits to Leuliette (but nowhere near as much as he had requested).[1]

Leuliette now comes before the Court, seeking judgment confirming the arbitration award (Dkt. 45) and asking that the Court keep the award under seal (Dkt. 46) – that is, keep it secret. Visteon meanwhile is asking that part of the Arbitrator's award be confirmed, but that the bulk of the award of benefits be vacated (Dkt. 54). Visteon also wants the award, and all of the other pleadings and exhibits it has filed in this civil action to be unsealed (Dkt. 50). The Court heard oral argument on these motions on January 24, 2018. For the reasons set forth below, Leuliette's motion to confirm the arbitration award (Dkt. 45) is hereby **GRANTED**,

---

[1] The record shows that Leuliette had requested a total of $61,630,131.74 in equity awards, retirement payments, severance, and other benefits, but he was awarded a total of $15,577,110, plus interest on that amount.

and Visteon's motion to confirm the award in part and vacate it in part (Dkt. 54) is hereby **DENIED**. Furthermore, Visteon's motion to unseal (Dkt. 50) is **GRANTED IN PART** and **DENIED IN PART** and Leuliette's motion to seal (Dkt. 46) is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

On February 19, 2016, Leuliette initiated arbitration proceedings through the American Arbitration Association (AAA) against Visteon, alleging breaches of his Employment Agreement, and seeking to recover severance benefits. Visteon filed this lawsuit on March 31, 2016, seeking to stay the arbitration proceedings and instead litigate the matter before this Court. On August 5, 2016, this Court denied Visteon's motion to stay the arbitration proceedings, and ordered the parties to continue the arbitration process (Dkt. 42).

On October 31, 2017, Arbitrator Martin Weisman issued his Final Arbitration Award. He ruled that, under the terms of an Employment Agreement, Visteon must pay Mr. Leuliette $15,577,110, plus $1,172,271.62 in interest (as of Oct. 2, 2017), and interest of $2,139.86 per day until the award is paid in full. The Arbitrator also ruled that

3

that Visteon is obligated to pay the AAA's and the Arbitrator's fees and costs.

## ANALYSIS

### A. *Motions to Confirm or Vacate Arbitration Award*

The Court first considers the parties' cross-motions to confirm the Arbitration Award, either in whole or in part. These motions are governed by the Federal Arbitration Act [FAA] – 9 U.S.C. §§ 1, *et seq*. Section 9 of the FAA authorizes the Court to confirm an arbitration award upon the request of the parties, and enter judgment upon it. Leuliette's motion is brought under this section, as he seeks an order confirming the Award and reducing it to a Judgment.

Visteon wants the Award confirmed in part, and vacated in part. Specifically, Visteon urges the Court to confirm the portion of the Award which it believes found that that Leuliette was ultimately terminated for "Cause," but vacate the portion of the Award that granted Leuliette certain stock dividend payments identified as "Accrued Benefits" under the Employment Agreement. To vacate or modify an arbitration award governed by the FAA, one must follow the procedures set out in Sections 10

4

and 11 of that statute, which "provide [the] exclusive regime[ ] for the review provided by the [FAA]." *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 378 (6th Cir. 2008) quoting *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576 (2008).

Section 10 of the FAA authorizes the Court to "make an order vacating the award" in four situations:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

Section 11 of the FAA authorizes the Court to "make an order modifying or correcting the award" in three situations:

> (a) where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

> (b) where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or
>
> (c) where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. §11.

The FAA expresses a "federal policy favoring arbitration." *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989)). "When courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence." *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 305 (6th Cir. 2008). Under the FAA, "[t]he burden of proving that the arbitrators exceeded their authority is very great...." *Solvay Pharmaceuticals, Inc. v. Duramed Pharmaceuticals, Inc.*, 442 F.3d 471, 476 (6th Cir. 2006) (quoting *Nationwide Mutual Insurance Company v. Home Insurance Company*, 330 F.3d 843, 846 (6th Cir. 2003)). "The terms of the contract define the powers of the arbitrator, and 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn

his decision.'" *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)); *see also Michigan Sugar Co. v. Bakery, Confectionary, Tobacco Workers, and Grain Millers International Union*, 278 Fed. App'x. 623, 628 (6th Cir. 2008) (no basis to vacate arbitration award "even if the Arbitrator made a 'bizarre' and 'unsupported' finding because [courts] are directed to tolerate even 'serious, improvident, or silly' legal or factual errors") (quoting *Michigan Family Resources, Inc. v. SEIU 517M*, 475 F.3d 746, 753 (6th Cir. 2007)).

Visteon's motion seeks partial vacatur of the Arbitrator's award pursuant to § 10 of the FAA; Visteon does not cite or rely upon § 11 of the FAA (Dkt. 54 at 18). As seen above, § 10 allows vacatur for reasons such as corruption, impartiality, misconduct or exceeding the arbitrator's powers. At oral argument, Visteon's counsel reiterated that it was relying solely on § 10, not on § 11 of the FAA. In particular, Visteon argues that the Arbitrator "exceeded his powers" in crafting his damage award, and erred in excluding certain evidence from the proceedings. Yet Visteon does not seek to vacate the entire award. Rather, Visteon's motion seeks to "confirm in part, and vacate in part" the award. Visteon thus seeks to

7

*modify* the award. The problem for Visteon is that Sixth Circuit precedent, binding on this Court, clearly holds that this Court's power to modify an award arises only under § 11 of the FAA, which allows modification where there is a miscalculation, a material mistake, a decision on a matter not actually before the Arbitrator or some other imperfection of form that does not relate to the merits of the case. *See Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 378 (6th Cir. 2008); *NCR Corp. v. Sac–Co, Inc.*, 43 F.3d 1076, 1080 (6th Cir. 1995).

In a reply brief filed the day before the hearing, Visteon argues that "numerous federal courts have held that partial vacatur – [under § 10 of the FAA] – is permitted where an arbitrator exceeds his or her authority." (Dkt. 62 at 2). However, the cases offered in support of this proposition are from the Fifth, Seventh, and Eleventh Circuits.[2] This Court must apply the precedent of the Sixth Circuit in deciding the scope of its authority to modify an Arbitrator's award, and that precedent is not in accord with the authorities cited by Visteon.

---

[2] *See, e.g., Smith v. Transp. Workers Union of Am., AFL-CIO Air Transp. Local 556*, 374 F.3d 372, 375 (5th Cir. 2004); *Carpenter Local No. 1027, Mill Cabinet-Indus. Div. v. Lee Lumber & Bldg. Material Corp.*, 2 F.3d 796, 800 (7th Cir. 1993); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1384 n.9 (11th Cir. 1988).

8

In *Grain v. Trinity Health*, 551 F.3d at 380, the Sixth Circuit clearly held: "[a] court's power to modify an arbitration award is **confined to the grounds specified in [FAA] § 11**..." (emphasis added); *see also NCR Corp. v. Sac–Co, Inc.*, 43 F.3d 1076, 1080 (6th Cir. 1995) (same). Visteon's attempts to distinguish *Grain* are not persuasive. Visteon argues that *Grain* is distinguishable because the plaintiff in *Grain* asked the Court to *double* the amount of the award. Visteon, by contrast, wants this Court to eliminate a large portion of the damage award, and keep everything else. Visteon's purported distinction is one without a difference. Visteon is not seeking to have the whole award thrown out and asking the Court to order the parties to start over with a new arbitration. It is asking for a modification of an arbitration award. And the Sixth Circuit has held that under the FAA, a party seeking to modify an arbitration award must assert grounds set out under § 11. Visteon has not done that, so on procedural grounds alone its motion must be denied.

Furthermore, even if it were permitted to rely on the bases set forth in § 10 to modify an arbitration award, Visteon has not done so successfully here. Visteon's first argument is that the Arbitrator "exceeded his authority" by awarding Leuliette stock dividends on stock that he did not

9

"own." A close reading of the Arbitrator's opinion and the various employment and stock agreements that relate to it shows that the Arbitrator concluded that the Employment Agreement's definition of "Accrued Benefits" includes such dividend equivalent payments.

As explained in the Award, the circumstances of Leuliette's termination from Visteon are somewhat unusual: he was initially terminated without cause and then, nearly a year later, Visteon sought to transform his termination into one with cause based on the result of their investigation of his conduct. Neither the Employment Agreement, which defines "Accrued Benefits", nor the Agreements on Restricted and Performance Stock Units, which confer rights to payments of dividend equivalents, explicitly contemplate this scenario. The Arbitrator was thus called upon to interpret these contracts, which was a duty clearly within his authority.

Visteon objects to the Award's damage calculation, but does not point to any specific provision of the underlying Agreements that expressly prohibits that calculation. The Arbitrator's decision to award the dividend equivalent payments as "Accrued Benefits" – while admittedly

short on explicit reasoning explaining the rationale for reaching this conclusion – appears to be consistent with the language of the Agreements. In this unusual – "without cause" then "with cause" – termination, the awarding of dividends appears to be fully within the Arbitrator's discretion and authority.

For example, § 3(a) of the Restricted Stock Unit Agreement states that the "Participant" (Leuliette) "forfeits any and all rights to Restricted Stock Units that have not vested on the termination date…" The vesting date at issue in this litigation is August 10, 2015, when Leuliette was supposed to receive 28,419 shares of Visteon stock. Here, Leuliette was terminated on June 9, 2015.

However, § 3(c) says that if Leuliette is terminated *without cause*, then he is to receive a *pro rata* award of Visteon shares, calculated based on when during the year he is terminated. There is no dispute that Visteon's initial termination of Leuliette – on June 9, 2015 – was without cause, thus entitling Leuliette to a *pro rata* award of stock. The question before the Arbitrator was what impact Leuliette's later "for cause" termination had on this *pro rata* award (which had been given to him originally upon his termination without cause).

11

Furthermore, under § 5, Leuliette is also entitled to "Dividend Equivalents," which are "the same amount of cash…that [Leuliette] would have received as cash dividends if, on each record date during the period from the Grant Date [Sept. 20, 2012] through the Settlement Date [10 days after his termination without cause – or, June 19, 2015, see §4(a)(iii)], that [Leuliette] had been the holder of record of one share of Stock."

Under the Employment Agreement, even if he were terminated "with cause," Leuliette was entitled to "Accrued Benefits." *See* Employment Agreement § 8(c). The Arbitrator appeared to treat "Dividend Equivalents" as "Accrued Benefits," as that term is defined in § 8(a)(iv) of the Employment Agreement. If such "Dividend Equivalents" were properly construed as "Accrued Benefits," Leuliette would be entitled to them even if he had been terminated for cause. The Arbitrator did not, however, treat the *pro rata* award of shares as an "Accrued Benefit"— perhaps because the award of shares was only available to an employee terminated without cause—and did not award these to Leuliette.

On January 15, 2016, Visteon issued a special one-time dividend payment of $40.43. In his damage calculation, Leuliette requested

12

26,809.89 shares of Visteon stock – the *pro rata* amount he would have been entitled to under § 3(c).  He also requested the "Dividend Equivalent" payment on this number of shares which, based on the $40.43 dividend, equaled $1,163,549.23.  A similar construction and calculation is present in the Performance Stock Unit Agreement (under which the Arbitrator awarded $12,419.915.58 in Dividend Equivalents).

Ultimately, the Arbitrator awarded Leuliette the "Dividend Equivalents," but he did not award him any *pro rata* shares of stock.  Whether this interpretation of the contracts is correct is not for this Court to decide, given the extremely limited standard of review governing arbitration awards.  *See, e.g., Michigan Sugar Co.,* 278 Fed. App'x. 623, 628 (6th Cir. 2008) (no basis to vacate arbitration award "even if the Arbitrator made a 'bizarre' and 'unsupported' finding because [courts] are directed to tolerate even 'serious, improvident, or silly' legal or factual errors").

Unquestionably, the applicable Agreements fail to address what should happen when a termination without cause is later transformed into a termination with cause.  The Court simply cannot find that the Arbitrator's Award was completely unfounded, or was a manifest disregard of the law.  As such, the Award must be confirmed.

As to Visteon's complaint that the Arbitrator wrongly excluded certain items from evidence, it was clearly within his authority to do so. It is well established in this Circuit that "[a]rbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing." *Barrick Enters., Inc. v. Crescent Petro., Inc.*, 496 Fed. App'x. 614, 620, 2012 WL 3668006, at *6 (6th Cir. Aug. 27, 2012) (alteration in original) (quoting *Nat'l Post Office Mailhandlers v. U.S. Postal Serv.*, 751 F.2d 834, 841 (6th Cir. 1985)); accord *Dobson Indus., Inc. v. Iron Workers Local Union No. 25*, 237 Fed. Appx. 39, 48 (6th Cir. 2007); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 625 (6th Cir. 2002).

Arbitrators are not bound to hear all the evidence tendered by the parties; they need only afford each party the opportunity to present their arguments and evidence. *See Terk Techs. Corp. v. Dockery*, 86 F.Supp.2d 706, 709 (E.D. Mich. 2000)). Thus, where arbitrators refuse to hear certain evidence, a party must show that the excluded evidence was material to the arbitrators' determination and that the refusal to hear that

14

evidence was so prejudicial that the party was denied fundamental fairness. *See Warren v. Tacher*, 114 F.Supp.2d 600, 602 (W.D. Ky. 2000). The standard for the Court's review of whether the arbitrators' decision constituted "misconduct" under § 10(a)(3) is "abuse of discretion." *Floyd Cnty. Bd. of Educ. v. EUA Cogenex Corp.*, 198 F.3d 245, 1999 WL 1023704, at *2 (6th Cir. 1999) (unpublished table decision) (citing *Schmidt v. Finberg*, 942 F.2d 1571, 1573 (11th Cir. 1991)). "To meet this standard, the party seeking to vacate the arbitration award must prove by clear and convincing evidence that the arbitrator had no reasonable basis for his decision." *Id.* (citing, *e.g., In re Time Constr., Inc.*, 43 F.3d 1041 (6th Cir. 1995)). Visteon has not cleared this high hurdle. The arbitration in this case consumed over 10 days of hearings, with a transcript over 2,000 pages long. At the conclusion of the hearing, the parties submitted hundreds of pages of post-hearing briefing. The Arbitrator's decision to exclude the objected-to evidence simply does not rise to the level of depriving Visteon of fundamental fairness. This challenge is not well-taken.

In sum, the Court is not persuaded that there is any valid basis to disturb the Arbitrator's Award, and it will therefore be confirmed.

### B. *Motions to Seal or Unseal Record*

The Court next considers the parties' cross motions to seal, or unseal, the record in this case. Leuliette argues that virtually all of the filings in this matter should remain sealed, as they concern "sensitive and private conduct."[3] Visteon argues that this case involves matters of public concern – the termination of the CEO of a publically traded company, and award of his severance benefits – and urges the Court to unseal *all* of the pleadings and exhibits in this case.

As to Leuliette's argument to keep everything under seal, the Sixth Circuit has noted, "[s]imply showing that the information would harm [a party's] reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir.

---

[3] The Arbitration Award concludes there was legitimate cause for Leuliette's termination based on his downloading pornography on to company computers, posting obscene messages and pictures on social media, storing obscene photographs on company devices, viewing websites concerning prostitution and soliciting prostitutes. It also discusses a settled claim of sexual harassment against Leuliette that Visteon claimed should have been disclosed to Visteon's Board before he was hired as CEO and President. Visteon is seeking that all of the pornographic images and obscene material, and any and all evidence of inappropriate conduct by Leuliette, be made accessible on the Court's electronic filing system so that it may be viewed by the public. Such material, however, is not relevant to the issue or the decision currently before the Court.

16

1983). Furthermore, the Sixth Circuit has recently decided cases reversing district courts for too liberally sealing litigation filings. *See, e.g., Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016); *Signature Management Team, LLC v. Doe*, 2017 WL 5710571 (6th Cir., April 27, 2017).

The Court acknowledges that arbitration hearings normally proceed outside of the public sphere. However, this veil of secrecy is lifted once the parties turn to federal court to confirm, vacate, or modify an arbitration award. *See, e.g., Martis v. Dish Network*, 2013 WL 6002208 (W.D. Mich., Nov. 12, 2013). Furthermore, there is a "strong presumption in favor of open[ ]" judicial records. *See Brown & Williamson*, 710 F.2d at 1179. Although a district court may enter a protective order during discovery upon a showing of "good cause," Fed. R. Civ. P. 26(c)(1), "there is a stark difference between so-called 'protective orders' ... and orders to seal court records." *Shane Group*, 825 F.3d at 305. "Only the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983).

And, where there is a compelling reason not to disclose certain information, the non-disclosure must be narrowly tailored to serve that reason. *See Shane Group*, 825 F.3d at 305.

The contract under which Leuliette sought severance benefits during the arbitration – the Employment Agreement – is publicly available and the subject of SEC filings. Visteon is a public company and has fiduciary duties to its shareholders. The public deserves to know why Visteon's ex-CEO was terminated, and why he is collecting a $15M+ severance package from the company. Meeting the public interest in this matter requires that the Arbitration Award must be unsealed. As for the remainder of the record, the public interest in unsealing the various exhibits and documents outside of the actual award is less significant because the only matter appropriately before the Court is the question whether the Award should, or should not be, confirmed. The other documents and pleadings in this case are not relevant to the Court's resolution of this issue so that – aside from the Arbitration Award – they shall remain sealed.

## CONCLUSION

For the reasons set forth above, Leuliette's motion to confirm the arbitration award (Dkt. 45) is hereby **GRANTED**, and Visteon's motion to confirm the award, in part, and vacate it, in part, (Dkt. 54) is hereby **DENIED**. The Clerk is hereby directed to enter an appropriate Judgment in favor of Leuliette and against Visteon.

Furthermore, Visteon's motion to unseal (Dkt. 50) is **GRANTED IN PART** and **DENIED IN PART**, and Leuliette's motion to seal (Dkt. 46) is **GRANTED IN PART** and **DENIED IN PART**. The Clerk is hereby directed to post the Arbitration Award on the publically available docket in this matter. All other pleadings and exhibits shall remain under seal.

**SO ORDERED**.

s/Terrence G. Berg  
TERRENCE G. BERG  
UNITED STATES DISTRICT JUDGE

Dated: January 30, 2018

## **Certificate of Service**

I hereby certify that this Order was electronically submitted on January 30, 2018, using the CM/ECF system, which will send notification to each party.

s/A. Chubb  
Case Manager
